## Case No. 5,973.

### In re HAMBRIGHT.

[2 N. B. R. 498 (Quarto, 157);[1] 2 Am. Law T. Rep. Bankr. 61; 1 Chi. Leg. News, 201.]

District Court, W. D. South Carolina. April. 1869.

#### BANKRUPTCY—RIGHTS OF LIEN CREDITORS.

Where a creditor had a valid lien on real estate of the bankrupt, and after proving the debt in bankruptcy, applied to have said lien satisfied from the proceeds of the sale of said estate by the assignee, held, that he was so entitled upon deducting therefrom the cost of proving the lien, and their was no prior claim on such proceeds to pay the fees, costs, and general expenses in bankruptcy.

[Cited in Re Stevens, Case No. 13,392.]

[Cited in Adams v. Lee, 64 N. H. 422, 13 Atl. 787.]

By W. J. CLAWSON, Register:

I, the undersigned, having been designated by the court as the register in bankruptcy, before whom the proceedings in the above matter of the bankruptcy of Abner Hambright are to be had, do hereby certify that in the due course of such proceedings, the following question pertinent to the same arose and was stated and agreed to by J. Bolton Smith, Esq., attorney for A. F. Smith, executor of J. B. Manning, deceased, and T. W. Clawson, attorney for J. S. R. Thompson and T. S. Jeffreys, assignees of the estate of Abner Hambright, the above-named bankrupt:

The estate of the bankrupt, as embraced in his schedules, consisted of one tract of land containing one hundred and ten acres, an undivided interest in two other small tracts, and a small personalty. The whole

of the personal estate was set off to the bankrupt by the assignees, and the only property sold by them was the land referred to above, for which they realized the sum of eighty dollars and eighteen cents. A. F. Smith, executor of J. B. Manning, deceased, a creditor of the bankrupt, holds a judgment against the bankrupt for seventy-five dollars, obtained in 1856, which created a lien on the bankrupt's estate. This debt he has proved as a secured debt against the bankrupt's estate, according to form 46, Rice's Manual. The property of the bankrupt was sold by the assignees, free from encumbrance, and the proceeds of sale are insufficient to pay the fees, costs, and expenses of bankruptcy, and to pay off the judgment of A. F. Smith, executor. referred to above. The said A. F. Smith, executor, by his attorney, J. Bolton Smith, Esq., has since the sale served a notice on the assignees, which is hereunto attached, that he claims the proceeds of the sale of the lands as applicable to the aforesaid judgment. J. Bolton Smith, attorney for A. F. Smith, executor, insists that the judgment is entitled to be paid out of the proceeds of sale, to the exclusion of the fees, costs, and expenses; whereas, it is submitted by T. W. Clawson, attorney for assignees, that the fees, costs, and expenses in bankruptcy should first be paid, and that the balance, if any, remaining, in their hands, should be applied to the judgment; and the said parties requested that the same should be certified to your honor for your opinion thereon. The register agrees with the attorney for the assignees, that the proceeds of the sale of the property should be first applied to the payment of the fees, costs, and expenses in bankruptcy, and that the balance, if any, remaining in their hands, be applied to the judgment.

Under section twenty-eight of the bankrupt act [of 1867 (14 Stat. 530)], it is provided that, "in the order of a dividend * * * the following claims shall be entitled to priority, &c." "First. The fees, costs, and expenses of suits, and the several proceedings in bankruptcy." In the forty-seventh section, after providing a schedule of fees for the different officers, the act says: "Such fees shall have priority of payment over all other claims, out of the estate of the bankrupt, * * * and if there are not sufficient assets for the payment of the fees, the person upon whose petition the warrant issues shall pay the same." And in the next paragraph the act further says: "Before any dividend is declared, the assignees shall pay out of the estate to the messenger the following fees." From the clauses of the act above referred to, two propositions seem necessarily to follow: First. That the fees, costs, and expenses, have priority of payment over all other claims against the bankrupt's estate. Secondly. That the bankrupt is liable to pay no fees or expenses of his bankruptcy beyond his deposit fee, pro-

vided he has an estate which comes to the hands of the assignee sufficient for the payment of the same.

In confirmation of the second proposition, you will find an opinion in the Bankr. Court Reporter (page 48), in these words: "The bankrupt may apply to the assignee to pay from assets in his hands any sums he may have advanced, or procured to be advanced to the marshal as his fees, and the assignee may charge the same among his disbursements, to be paid out of the assets." The justice and equity of this ruling is obvious, from the fact that under rule 29 of General Orders, it is provided, "that the fees of the register, marshal, and clerk, shall be paid, or secured, in all cases, before they shall be compelled to perform the duties required of them by the parties requiring such services." Thus it would appear, that if the deposit fee is not sufficient to pay all the costs, and any of the officers refuse to perform the duties required of them until their fees are paid or secured, and the bankrupt should pay or secure the fees, he is entitled to have the same refunded by his assignee, out of his estate. If a creditor, holding a lien against the bankrupt's estate, is entitled to the whole of the proceeds of the sale of the bankrupt's estate, bound by his lien, then he would be also entitled to have the personal estate of the bankrupt, which is liable to be set off to him, sold for the same purpose. But congress has undertaken, as I think they had the right to do, to exempt for the benefit of the bankrupt, "household and kitchen furniture" and "other articles and necessaries," to the value of five hundred dollars. If a creditor holding a lien, has the right to have the proceeds of the sale of real estate applied to the payment of his lien, to the exclusion of the fees and expenses of bankruptcy, then he would have an equal right to have the whole of the personal estate sold, for the same purpose, thereby entirely depriving the bankrupt from any of the property exempted under the humane provisions of the bankrupt act, except the mere pittance allowed under the exemption law of the state.

In the case of McKittrick, from Abbeyville, S. McGowan, Esq., attorney for the petitioner, your honor held that the sheriff had no right to levy and sell the personal estate of the bankrupt, which might be set off to him under the bankrupt act, and enjoined him, as I think you had the right to do from selling any property which I would certify was exempt under the bankrupt act. And in that case, my impression is, the levy was made before the filing of the petition in bankruptcy. In this case no levy was made before the filing of the bankrupt petition. But I regard that as a matter of no consequence, for no creditor whose debt is provable in bankruptcy, has any right to intermeddle with the bankrupt's estate, after the filing of the petition, without the leave of the district court. Upon the filing of the petition, all proceedings against the bankrupt in state courts must stop statu quo, the district court having exclusive original jurisdiction over the bankrupt, his estate, and his creditors. Upon this point I refer your honor to the learned decision of Judge Erskine, of the Northern district of Georgia, in Re Winn [Case No. 17,876]. With that opinion I fully concur. I am therefore of the opinion that the assignee should first pay the costs and expenses of bankruptcy, and the balance to the creditor holding the lien in this case, and so respectfully recommend.

BRYAN, District Judge.—In this case the schedules of the bankrupt showed that he had an interest in certain parcels of real estate and in a small personalty. The personalty was set off to the bankrupt under the provisions of the fourteenth section of the act. The real estate was bound by the lien of a judgment entered in the state court for some seventy-five (75) dollars, which had also been duly proven in bankruptcy. This real estate, under an order of this court, had been sold by the assignee free from all encumbrances, and brought at the sale eighty (80) dollars. There are no other funds in the hands of the assignee. The creditor holding the judgment claims that the proceeds of the sale of the realty, bound by his lien, should be applied to the extinguishment of his lien, after paying the special costs incurred in proving it. The assignee contends that before the proceeds of sale can be applied to the lien, all the costs incurred in the whole proceedings in bankruptcy must be paid out of them. The point was submitted to Mr. Register Clawson, who decided it in favor of the assignee, and has certified his opinion, with the reasons for it, to this court.

The register relies upon the twenty-eighth and forty-seventh sections of the bankrupt act. The forty-seventh section, after providing a schedule of fees for the several officers of the court, says: "Such fees shall have priority of payment over all other claims out of the estate of the bankrupt. And if there are not sufficient assets for the payment of these fees, the person upon whose petition the warrant issues shall pay the same." What is meant by the expression "estate of the bankrupt"? Evidently such property and rights of property of the bankrupt as the bankrupt act vests in the assignee. The assignee can take nothing more than the bankrupt himself had in any case, except the case of a fraudulent conveyance by the bankrupt. The act does not divest liens acquired and consummated before the adjudication in bankruptcy. When the act, therefore, speaks of the estate of the bankrupt in the hands of the assignee, it means such estate with all the encumbrances existing upon it at the time of the bankruptcy. In other words, the net value of the property after the liens upon

it are satisfied. This will appear upon examining the twentieth section of the act.

The first clause of this section provides that in all cases of mutual account the account shall be stated, and one debt set off against the other, and the balance only allowed or paid. The second clause provides that when a creditor has a mortgage, or a pledge of real or personal property of the bankrupt, or a lien thereon for securing payment of a debt owing to him, he shall be admitted as a creditor only for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale. The third clause authorizes the creditor in such a case to release or convey to the assignee his claim upon such property, and then prove for the whole debt. The fourth clause provides that if the value of the property exceed the debt, the assignee may release to the creditor the bankrupt's right of redemption therein, on receiving such excess, or he may sell the property subject to the claim of the creditor. No comment is necessary. It is clear that the estate of the bankrupt, in property bound by a lien, is in the excess of the value of the property after satisfaction of the lien, and that this is all the act conveys to the assignee. That this forty-seventh section, in providing for the payment of the fees out of the "estate of the bankrupt," in its terms forbids the idea of the payment of the fees out of that portion of the property bound by a lien, which is not in excess of the lien. Inasmuch as the lien creditor seeks and enjoys the aid of this court in enforcing and realizing his lien, he is bound to pay the costs incurred in obtaining this aid. But with regard to the costs of general administration in which he has no concern, and in which he can have no interest until his lien is either satisfied or realized, it would be inequitable to require him to bear the burthen of them.

Upon examining the twenty-fifth section of the act, on which the register also relies, it will be seen that it makes provisions for the payment of certain preferred debts when a dividend is declared. It will be observed that a dividend is paid only to general creditors, and that no creditor holding a lien shall share in it, except for the overplus which may remain after crediting the debt with the full value of the property bound by the lien, or by the surrender and release of his lien altogether. Section 20. It will also be observed that the twenty-eighth section gives preference not only to the fees, costs, and expenses of suit, but also to four other classes of creditors—such as debts to the United States, debts to the state, wages of operatives, and debts due to persons who, by the laws of the United States, are entitled to priority or preference. The debts due to the United States are to be paid next after the costs. And yet it has been decided by a series of judicial decisions that a debt due to the United States is not in the nature of a lien, nor has a debt due the government a preference over the claims of a lien creditor. U. S. v. Hooe, 3 Cranch [7 U. S.] 73; [Bank of Columbia v. Hagner] 1 Pet. [26 U. S.] 458; Philips v. The Thomas Scattergood [Case No. 11,106]; U. S. v. Sheriff of Charleston [Id. 16,276]. So that this section puts in the same category of preferred debts the costs, &c.; and debts due to the United States must be understood to mean such a preference as is not inconsistent with the vested rights of a lien. Indeed, it can hardly be maintained that a creditor holding a lien which is recognized by this court should be postponed to all these five classes of creditors, or will be compelled to meet these debts of the bankrupt out of property pledged to him.

The register seems to apprehend that if the lien creditor can insist upon his lien to the exclusion of the general costs, he can also insist upon it as against the personalty set off to the bankrupt. But there is no ground for such apprehension. The bankrupt act takes hold of and administers all the property and rights of property of the bankrupt. When it has assumed jurisdiction, it exercises power over all persons and property connected with the bankrupt. It invites and compels the discovery and surrender, not only of visible property bound by liens, but of all rights, interests, and equities. In return for this frank and full discovery, it secures the bankrupt certain parts of his estate, which are set off to him free of all claim. Of these he, in fact, becomes the purchaser, in consideration for the purchase being the surrender of all his estate, and the sanction of his title being in the supreme law of the land. Again, the act of congress directs the court of bankruptcy to set apart a certain portion of the property in the schedule of the bankrupt for his use, free from the claims of creditors. The lien of a creditor upon the property so set apart could not, therefore, be enforced in this court. Nor could he use the state court for such a purpose before the adjudication of bankruptcy. This court assumes jurisdiction over all the property under the control of the bankrupt, and in this court it must be administered. The creditor having come into this jurisdiction, has submitted himself to it, and he is bound by its orders. An effort to enforce the law through the state court would put him in contempt, and would be punishable accordingly. I am of opinion that the register has erred in his ruling, and that the assignee, after paying the costs of the proceedings necessary for proving the lien, should pay the remainder of the proceeds of the sale of the real estate to creditors holding the same.